**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOSHUA GARDNER
300 Livingston Ter., #9
Washington, DC 20032,

Plaintiff,

v.

THE HERTZ CORPORATION
8501 Williams Rd.
Estero, FL 33928

and

TREASURY DEPARTMENT FEDERAL CREDIT UNION
1101 2nd St. NE
Washington, DC 20002

Defendant.

No. 1:25-cv-2596

**JURY TRIAL DEMANDED**

## COMPLAINT

1. Defendants The Hertz Corporation ("Hertz") and Treasury Department Federal Credit Union ("TDFCU") (collectively, "Defendants") charged or allowed unauthorized charges against Plaintiff Joshua Gardner's ("Plaintiff") bank account, in violation of the Electronic Funds Transfer Action, the D.C. Consumer Protection Procedures Act, D.C. common law.

## JURISDICTION

2. This Court has subject matter jurisdiction to consider and determine this matter, pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, and Defendant transacts business here.

## PARTIES

5. Plaintiff is a natural persons who resides in the District of Columbia.

6. TDFCU is a federal credit union with its principal place of business in the District of Columbia.

7. Hertz is a Delaware corporation with its principal place of business in Estero, Florida.

## FACTS

### Rentals with Hertz

8. Beginning in or around December 2022 through December 2024, Plaintiff regularly rented vehicles with Hertz.

9. Plaintiff had provided this TDFCU debit card ending in 8962 (the "Debit Card") in connection with a rental in or around November 2023.

10. The Debit Card was linked to Plaintiff's personal TDFCU bank account, with a member number ending in 8500 (the "Bank Account").

11. Plaintiff paid for the rentals via automatic payments on a weekly basis.

12. Plaintiff maintained his own EZPass and so never incurred any tolls that could be charged to Hertz.

13. To the extent Plaintiff returned the vehicles with less than the required about of fuel, Hertz notified Plaintiff at the time of return and charged the Debit Card at that time.

14. Plaintiff never incurred any damage to the vehicles he rented, and Hertz never notified him of any such damage.

15. Plaintiff did not authorize any other charges on the Debit Card.

**Billing Irregularities and Unlawful Debt Collection in 2023**

16. Beginning in or around October 2023, Plaintiff noticed irregular activity by Hertz on his bank account.

17. Specifically, Hertz repeatedly debited and recredited his weekly payments.

18. Plaintiff had sufficient funds in the Bank Account to cover the payments, and did not withdraw authorization for or otherwise stop payments.

19. On multiple occasions, however, on or about December 29, 2023, and February 12 and 23, 2024, Hertz e-mailed Plaintiff to tell him—erroneously—that he had not been charged one or more weekly payment, citing a billing error in its system.

20. Each e-mail indicated that the billing error had been resolved and would not happen again.

21. Each time, Plaintiff provided Hertz with bank statements confirming that he had made the required payments.

22. By no later than March 2024, Plaintiff had resolved all questions about outstanding payments and had paid all balances but remained uneasy about the irregularities with the account, as they prevented him from having confidence in the accuracy of his account balance.

**Unauthorized Charged in August 2024**

23. Notwithstanding its lack of authorization to do so, on or about August 8, 2024, Hertz charged $1,059.32 to the Bank Account, via the Debit Card.

24. That amount did not match any outstanding balance Plaintiff owed to Hertz.

25. In fact, Plaintiff had paid $1,059.32 to Hertz in January 2024, a charge reflected on his bank statement for that month.

26. Plaintiff had not authorized either charge to the Debit Card.

27. On or about August 9, 2024, Plaintiff contacted Hertz seeking an explanation for the charge.

28. Hertz's billing department inaccurately told him that the charge was for rentals in January 2024, a rental that had been fully closed out as paid in full.

29. Plaintiff promptly provided Hertz with a copy of his bank statements showing payment for January 2024.

30. Plaintiff also spoke with Alex Picariello, the rental location manager for Hertz, who indicated that he had no authority to correct the error and referred Plaintiff to the billing department.

31. On or about August 9, 2024, Plaintiff called TDFCU and spoke with Ms. Washington.

32. During that call, TDFCU advised Plaintiff to cancel the Debit Card so that future unauthorized transactions would not be attributed to him, and Plaintiff did so.

33. TDFCU should, therefore, have rejected any transactions on the canceled Debit Card after the cancelation.

34. TDFCU further advised Plaintiff to switch any future transactions with Hertz to a different mode of payment.

35. Plaintiff made clear during that call that any transactions against the Bank Account by Hertz going forward should be considered unauthorized.

36. Plaintiff promptly provided a dispute form, as requested by TDFCU, and TDFCU confirmed receipt on or about August 12, 2024.

37. Plaintiff contacted Hertz in or around mid-August 2024 to switch his billing to a credit card, and did not provide Hertz with a new debit card number.

38. Though Plaintiff had notified TDFCU immediately of the unauthorized charges, it did not recredit the disputed charges, either provisionally or permanently, within 10 business days, nor did it notify Plaintiff that it had found no error.

**Unauthorized Charge in September 2024**

39. On or about September 9, 2024, Hertz charged and TDFCU allowed a charge for $328.61.

40. That charge was ostensibly connected to a closed-out November 2023 rental, but no outstanding balance remained in connection with that rental.

41. Though Hertz had no valid debit card number for Plaintiff when it made that charge, TDFCU nonetheless honored the debit made by Hertz.

42. On or about September 9, 2024, after learning of the unauthorized charge, Plaintiff went to a TDFCU branch and spoke to David Baker, the branch manager.

43. Plaintiff reiterated to Mr. Baker that no charges after August 2024 by Hertz should be considered authorized and pleaded with Mr. Baker to protect his account from unauthorized charges by Hertz, noting the canceled card and dispute letters.

44. Mr. Baker, however, told Plaintiff that there was nothing he could do to prevent unauthorized charges by Hertz. Asked to block Hertz.

45. On or about September 16, 2024, Plaintiff e-mailed TDFCU, via its customer service representative Maria Beltran ("Beltran"), to report in writing the unauthorized charge, and Beltran advised Plaintiff that she had passed his dispute form on for processing.

46. On or about October 4, 2024, Plaintiff also e-mailed Hertz's executive office seeking assistance.

**Unauthorized Charges in October 2024 and Hertz' Admission of Error**

47. On or about October 10, 2024, two months after the original charge, TDFCUand/or Hertz finally recredited the $1,059.32 charged in August 2024, but a mere three weeks later, on or about October 31, 2024, Hertz charged and TDFCU allowed another charge against the bank account for the same amount.

48. Plaintiff did not authorize the October 31 charge.

49. On or about October 31, 2024, Plaintiff called TDFCU and spoke to card department manager Catherine Hogans ("Hogans") to report the unauthorized charge.

50. On or about November 4, 2024, Plaintiff emailed TDFCU, via Hogans, to dispute in writing the new $1,059.32 charge, including in his e-mail his January 2024 statement showing the charge as a duplicate.

51. TDFCU did not provisionally recredit the charge.

52. On or about November 13, 2024, Joshua J. of Hertz's Executive Customer Service Team, responded to Plaintiff's e-mail, stating:

> After reviewing our records, we identified a billing error that resulted in two unauthorized transactions totaling $1,387.93. We can confirm that the first transaction of $1,059.32 has already been resolved through a dispute with your financial institution.
>
> Additionally, we have issued a refund of $328.61 to your MasterCard ending in x8962. This amount had initially been disputed but was reversed and reposted to your credit card. Please allow 7-10 business days for this transaction to be processed.
>
> To prevent similar errors in the future, we are coordinating with our local leadership team to ensure that this was handled as a billing mistake. We

> sincerely apologize for the oversight and any hardship this may have caused you.

53. On or about November 14, 2024, Plaintiff called TDFCU customer service to advise of Hertz's response, only to receive a response from Hogans indicating that she was researching the issue and to refrain from communicating with other TDFCU representatives.

54. On or about November 15, 2024, Hertz refunded the $1,059.32 charge from October 31 and the $328.61 charge from more than two months prior.

55. TDFCU had not recredited the $328.61 in the interim.

**Unauthorized Charge in January 2025 and Unlawful Debt Collection by TDFCU**

56. Notwithstanding the extensive back and forth on the issue and Hertz's admitted error, on or about January 31, 2025, Hertz charged and TDFCU again allowed $328.61 against Plaintiff's bank account.

57. Plaintiff did not authorize the charge, the Debit Card had been canceled, and Plaintiff had ceased doing business with Hertz as of December 2024.

58. Plaintiff called and e-mailed Hertz on or about January 31, 2025, to report the unauthorized transaction.

59. On or about February 19, 2025, Plaintiff sent a fourth dispute to TDFCU for the unauthorized Hertz charge, e-mailing Hogans and Beltran and copying several other TDFCU personnel.

60. Instead of promptly recrediting the unauthorized charge, TDFCU sent Plaintiff a letter, dated February 24, 2025, stating, "Your share draft balance has now been negative in the amount of $-321.64 for over 25 days and your membership is in danger of being closed. This

amount may then be forward to a nationwide collection agency and may inhibit your ability to open or maintain your accounts at other financial institutions."

61. Pursuant to a call by Plaintiff on or about February 25, 2025, Hertz refunded the unauthorized $328.61 charge on or about March 4, 2025, but, upon information and belief, TDFCU took no steps to do so itself.

**Documentation of Investigations and Authorization**

62. At no point did TDFCU ever provide Plaintiff with any written results of any investigation, and, when Plaintiff requested such results, TDFCU indicated that it did not have any.

63. On or about May 28, 2025, Plaintiff contacted Hertz seeking copies of all signed documents authorization charges on his Bank Account.

64. Hertz provided only an agreement dated November 2023 and confirmed to Plaintiff that it had no other such documents.

**Damages**

65. As a result of Defendants' actions, he lost access to money for significant periods of time, preventing him from making timely bill payments.

66. The delinquencies caused by Defendants' actions have, in turn, done significant damage to Plaintiff's credit and led to denials and higher interest rates.

67. Plaintiff has had to sharply curtail the use of the Bank Account and instead seek other methods of receiving and paying money.

68. Also as a result of Defendants' actions, Plaintiff has suffered significant emotional distress, manifest by symptoms including, but not limited worsening depression and loss of focus.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT
### 15 U.S.C. § 1693f and 12 C.F.R. §1005.11
### (Against TDFCU)

69. Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as if set forth fully herein.

70. The transactions at issue were conducted via debit card, an "accepted access device" as defined by 15 U.S.C. § 1593a(1) and 12 C.F.R. § 1005.2(a).

71. The Bank Account is a demand deposit account established and used primarily for personal pursues, within the meaning of 15 U.S.C. § 1693a(2).

72. All of the unauthorized transactions were, accordingly, "electronic funds transfers" as defined by 15 U.S.C. § 1693a(7) and 12 C.F.R. § 1005.3.

73. Hertz had no actual authority to initiate transactions using the Debit Card or, as of September 2024, involving the Bank Account at all.

74. Plaintiff provided notice of each of the unauthorized transactions pursuant to 15 U.S.C. § 1693f(a) and 12 C.F.R. §§ 1005.6(b)(1) and (5) within 60 days.

75. The notices included Plaintiff's name and member number, identified the transactions disputed pursuant to 15 U.S.C. § 1693(f)(1), and provided information and documentation as to the basis for the lack of authorization for the transactions.

76. Each notice was a "notice of errors," as that term is defined in 12 C.F.R. §§ 1005.11(a)(1)(i) and (1)(vii).

77. Upon information and belief, TDFCU failed to conduct a reasonable investigation, to report the results of any investigation to Plaintiff, in writing or otherwise, or to correct the error within 10 business days, provide a written report that no error had occurred, or provisionally recredit the unauthorized charged, pursuant to 15 U.S.C. §§ 1693f(a)-(d) and 12 C.F.R. § 1005.11(c).

78. TDFCU knew or should have known that it had no reasonable basis for failing to find an error or to recredit the unauthorized charges, and failed to conduct a good faith investigation.

79. TDFCU is, accordingly, liable to Plaintiffs for actual and statutory damages, as well as attorney's fees and costs, pursuant to 15 U.S.C. § 1693m, and treble damages pursuant to 15 U.S.C. § 1693f(e).

**COUNT II**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. § 1693g and 12 C.F.R. § 1005.6**
**(Against TDFCU)**

80. Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as if set forth fully herein.

81. Hertz had no actual authority to initiate transactions using the Debit Card or, as of September 2024, involving the Bank Account at all.

82. To the extent the charges at issue were ever authorized, Plaintiff revoked authorization.

83. Plaintiff provided timely notice of each of the unauthorized transactions pursuant to 12 C.F.R. §§ 1005.6(b)(1) and (5), in most cases within two business days, and in all cases within 60 days.

84. For extended periods of time, TDFCU held Plaintiff responsible for more than the limits authorized by 12 C.F.R. § 1005.6(b) and 15 U.S.C. § 1693g.

85. TDFCU is, accordingly, liable to Plaintiffs for actual and statutory damages, as well as attorney's fees and costs, pursuant to 15 U.S.C. § 1693m.

**COUNT III**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. §§ 1693e and h**
**(Against TDFCU)**

86. Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as if set forth fully herein.

87. To the extent Plaintiff provided preauthorization to TDFCU to issue recurring charges on the Debit Card, Plaintiff notified TDFCU in or around May 2024—more than three business prior to the August 2024 transfer—that he was stopping payment on all future transactions on the Debit Card by Hertz and canceled the card.

88. To the extent Plaintiff provided preauthorization to TDFCU to issue recurring charges on the Debit Card, Plaintiff notified TDFCU in or around August 2024—more than three business prior to the September 9, 2024 transfer—that he was stopping payment on all future transactions on the Debit Card by Hertz and canceled the card.

89. Plaintiff stopped all payments, at least beginning in September 2024, both orally and in writing, pursuant to 15 U.S.C. § 1693e(1) and the terms and conditions of the Bank Account.

90. TDFCU failed to stop the payments, as required by 15 U.S.C. § 1693h(a)(3).

91. TDFCU is, accordingly, liable to Plaintiffs for actual and statutory damages, as well as attorney's fees and costs, pursuant to 15 U.S.C. § 1693m and 15 U.S.C. § 1693h(a).

**COUNT IV**

**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. §§ 1693e**
**(Against Both Defendants)**

92. Plaintiff repeats and realleges the factual allegations in the foregoing paragraphs as if set forth fully herein.

93. To the extent Plaintiff provided preauthorization to TDFCU to issue recurring charges on the Debit Card to Hertz, the amount of such transfers varied.

94. Neither Defendant provided Plaintiff with reasonable notice prior to any of the transfers between August 2024 and January 2025 of either the date or amount of such transfers, in violation of 15 U.S.C. § 1693e(b).

95. Plaintiff stopped all payments, at least beginning in September 2024, both orally and in writing, pursuant to 15 U.S.C. § 1693e(1).

96. TDFCU failed to stop the payments, as required by 15 U.S.C. § 1693h(a)(3).

97. TDFCU is, accordingly, liable to Plaintiffs for actual and statutory damages, as well as attorney's fees and costs, pursuant to 15 U.S.C. § 1693m.

**COUNT V**
**VIOLATION OF THE D.C. CONSUMER PROTECTION PROCEDURES ACT**
**D.C. Code § 28-3901 *et seq.***
**(Against TDFCU)**

98. Plaintiff incorporates by reference the factual allegations in the above paragraphs of this Complaint as though fully stated herein.

99. Provision of banking services is a trade practice within the meaning of D.C. Code §§ 28-3901(a)(6) and (7).

100. Plaintiff received banking services from TDFCU for personal purposes and is a "consumer" within the meaning of D.C. Code § 28-3901(a)(2).

101. TDFCU supplies banking services and is therefore a "merchant" within the meaning of D.C. Code § 28-3901(a)(3).

102. TDFCU misrepresented to Plaintiff, directly or implicitly:

a. That his balance was properly reduced by the debit from Hertz;

b. That his account was in overdraft status;

c. That Hertz had valid preauthorization to make transfers from the Bank Account;

d. That the TDFCU was conducting an investigation of the unauthorized transactions;

e. That TDFCU did not need to promptly recredit the unauthorized transactions and/or that Plaintiff could be held responsible for the unauthorized transactions for more than 10 business days;

f. That canceling his debit cards would prevent future unauthorized transactions; and

g. That there was nothing TDFCU could do to prevent future unauthorized transactions.

103. TDFCU failed to inform Plaintiff that:

a. Hertz had initiated multiple transactions against the Bank Account; and

b. That a preauthorization remained in place for transactions from Hertz.

104. TDFCU's misrepresentations and omissions were material and had the tendency to mislead, in violation of D.C. Code §§ 28-3904(e), (e-1), (f), and (f-1).

105. Hertz knew or recklessly disregarded clear evidence that the transactions were not authorized, and its actions were, accordingly, willful.

106. As a result of TDFCU's actions, Plaintiff suffered damages as set forth above.

107. Plaintiff is, accordingly, is entitled to recover treble damages, punitive damages, costs, and attorney's fees, pursuant to D.C. Code § 28-3905(k).

**COUNT VI**
**Breach of Contract**
**(Against Hertz)**

108. Plaintiff incorporates by reference the factual allegations in the above paragraphs of this Complaint as though fully stated herein.

109. Plaintiff entered into an agreement with Hertz for vehicle rental.

110. The agreement was binding on Plaintiff and Hertz.

111. Pursuant to the agreement, Plaintiff preauthorized certain charges only by Hertz, and that those charges would be paid via the Debit Card.

112. Plaintiff timely satisfied the charges provided for in the agreement.

113. Hertz breached the agreement by using the preauthorization to charge Plaintiff in excess of the agreed amounts and charging the Bank Account via a card not agreed to.

114. As a result of Defendant's breach, Plaintiff suffered damages as set forth above, for which Hertz is liable to Plaintiff.

**COUNT VII**
**NEGLIGENCE**
**(Against Hertz)**

115. Plaintiff incorporates by reference the factual allegations in the above paragraphs of this Complaint as though fully stated herein.

116. Hertz had a duty of care to safeguard and refrain from misusing Plaintiff's Plaintiff's banking information.

117. Hertz breached that duty by making repeated duplicate and unauthorized transactions against the Bank Account.

118. Hertz's actions caused Plaintiff damages, as set forth above.

119. As a result of the Hertz's wrongful acts, Plaintiff is entitled to compensatory and punitive damages.

**COUNT VIII**
**Conversion**
**(Against Hertz)**

120. Plaintiff incorporates by reference the factual allegations in the above paragraphs of this Complaint as though fully stated herein.

121. Hertz took funds belonging to another, namely, Plaintiff, by initiating unauthorized electronic debits for amounts already paid or otherwise not owed.

122. Hertz intended to take Plaintiff's property.

123. Hertz had no permission or justification for taking Plaintiff's property and, in fact, admitted that its transfers were erroneous, before intiating a transaction again.

124. As a result of Hertz's wrongful acts, Plaintiff suffered the loss of use of his money, and emotional distress.

125. As a result of Hertz's wrongful acts, Plaintiff is entitled to compensatory and punitive damages.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, to redress the injuries caused by Defendants' conduct as stated in the foregoing paragraphs, Plaintiff hereby requests the following relief:

A for an award of actual and/or compensatory damages;

B for an award of statutory damages;

C for an award of treble damages;

D for an award of costs of litigation and reasonable attorney's fees;

E for an award of punitive damages;

F for an award of pre-judgment and post-judgment interest; and

G for such other and further relief as may be just and proper.

Dated: Washington, D.C.
August 7, 2025

Respectfully submitted on behalf of Plaintiffs,

*/s/ Courtney L Weiner*
Courtney L. Weiner (# 992797)
Law Office of Courtney Weiner PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
PH: 202-827-9980
cw@courtneyweinerlaw.com

*Attorney for Plaintiff*